UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FERLEY LOPEZ TORRES (A-Number: 240-801-100),

Petitioner,

v.

WARDEN, CALIFORNIA CITY DETENTION FACILITY,

Respondent.

Case No. 1:26-cv-5190-DJC-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Ferley Lopez Torres, a citizen of Colombia, entered the United States in 2022 and was released on his own recognizance by immigration authorities. On June 19, 2026, ICE agents re-detained petitioner pursuant to an immigration arrest warrant. He has since been held in immigration custody without a bond hearing. Petitioner, initially proceeding pro se, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, arguing that his detention violated due process. Respondent responded that petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) based a foreign drug trafficking conviction. For the following reasons, I recommend that the petition be granted and that respondent be ordered to immediately release petitioner.

**Background**

Petitioner, a citizen of Colombia, entered the United States with his wife and son without permission on April 27, 2022. ECF No. 8-2 at 3, 9-10. Immigration authorities detained them.

*Id.* A record check conducted at the time indicated that petitioner "does not have any criminal history." *Id.* at 10. Petitioner alleges that he has no criminal convictions in the United States or elsewhere. ECF No. 1 at 5. On April 29, 2022, immigration authorities served petitioner a notice to appear ("NTA") for immigration court and released him on his own recognizance into the United States. ECF No. 8-2 at 3, 8, 13.

Petitioner and his family lived in the San Jose, California area. ECF No. 1 at 5. They applied for asylum, and that matter is pending. *Id.* On June 18, 2024, authorities granted petitioner a work permit and a social security number. *Id.* Petitioner obtained a car and registered it. ECF No. 8-2 at 2. He and his family obtained an apartment and provided the address to immigration authorities. *Id.* Petitioner has been working for Uber and DoorDash and paying taxes while released in the United States. ECF No. 1 at 5. Petitioner and his wife have a two-year-old United States citizen child born during the time he was at liberty in the community. *Id.*

On June 18, 2026, ICE obtained an immigration warrant for petitioner's arrest based on the pendency of removal proceedings against him. ECF No. 8-2 at 4. On June 19, 2026, ICE agents re-detained petitioner at his home in Morgan Hill, California. *Id.* The Form I-213 from this detention indicates that immigration authorities received a referral regarding petitioner from "ELITE" but does not explain what that is or when the referral was received. *Id.* Immigration authorities confirmed at the time of his re-detention that petitioner has no criminal history of any kind in the United States. *Id.* at 3. However, respondent alleges that petitioner has a 2008 drug trafficking conviction from Colombia. *Id.*; *see* ECF No. 8-1.

Petitioner's immigration case is proceeding on the 2022 NTA, which alleges that he entered the United States without being "admitted or paroled after inspection." *Id.* at 5. Petitioner has been detained in custody since June 19, 2026, without a bond hearing. Respondent claims that petitioner has been ordered removed, *see* ECF No. 8 at 2, but does not provide any removal order.[1] Petitioner denies that he has been ordered removed, *see* ECF No. 13 at 2, and

[1] This assertion appears to be in error. Respondent cites both Exhibit A at page 5 and Exhibit B at page 5 as being the removal order. *See* ECF No. 8 at 2. Exhibit A appears to be

supplies the EOIR automated case information, showing that petitioner is set for a master calendar hearing on August 17, 2026, *see* ECF 13-1. Based on the present record, I find that petitioner is not subject to a removal order.

**Background**

Petitioner filed the pro se petition for writ of habeas corpus on July 6, 2026, and moved for a temporary restraining order.[2] ECF Nos. 1 & 3. ECF Nos. 3. He also moved for appointment of counsel. ECF No. 4. On July 8, 2026, the court ordered a response to the petition ECF No. 7. The government responded on July 14, 2026. ECF No. 8. Based on that response, the court appointed counsel on July 15, 2026, and referred the matter to me. ECF No. 9. I provided the opportunity for appointed counsel to amend the petition or file a reply. ECF No. 11. Counsel elected to reply on August 4, 2026.[3] ECF No. 13. The matter is fully briefed and submitted.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of

---

filed as ECF No. 8-1: there is no page 5 in that exhibit. *See* ECF No. 8-1. Exhibit B appears to be filed as ECF No. 8-2: page 5 of that exhibit is the NTA. *See* ECF No. 8-2 at 5. Further, respondent's assertion in ECF No. 8 that there already existed a removal order is inconsistent with respondent's exhibit at ECF No. 8-3, which discusses a subsequent immigration court hearing at which a removal order could be entered.

[2] I recommend that petitioner's motion for temporary restraining order, ECF No. 3, be denied as moot in light of the recommendation that the petition be granted on the merits.

[3] Meanwhile, on July 23, 2026, petitioner filed a second pro se petition in this district. *See Lopez-Torres v. Warden*, No. 1:26-cv-5738-DJC-JDP (E.D. Cal.). The second action has been related to the instant case, and, as petitioner is represented in the current case, and the pending petitions raised the same issues, I have recommended that the petition in the second action be dismissed. *See Lopez-Torres v. Warden*, No. 1:26-cv-57380-DJC-JDP, ECF No. 11.

reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner argues that his detention without a bond hearing violates due process. ECF No. 1 at 15-16. Respondent counters that petitioner's detention is mandatory under 8 U.S.C. § 1226(c)(1)(A) because he was convicted in Colombia in 2008 for "drug trafficking." ECF No. 8 at 1.

Under § 1226(c)(1)(A), the attorney general "shall take into custody" any noncitizen who "is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." Respondent argues that petitioner is inadmissible under section 1182(a)(2)(C)(i), which applies to "any alien who the . . . Attorney General knows or has reason to believe is or has been an illicit trafficker in any controlled substance." 8 U.S.C. § 1182(a)(2)(C)(i). Respondent argues that the "reason to believe" standard does not require a conviction but does require "probable cause grounded in reliable evidence and may be shown through circumstantial proof." *See* ECF No. 8 at 2 (citing *Alcaron-Serrano v. INS*, 220 F.3d 1116, 1119-20 (9th Cir. 2000).) Respondent submits a docket sheet from the Republic of Colombia Judiciary that has been translated into English. ECF No. 8-1. That translated docket sheet indicates that a "Ferley Lopez Torres" was convicted of "drug trafficking" in 2008 and sentenced to four years of house arrest.[4] *Id.* at 1.

As respondent acknowledges, "substantial evidence" must be offered to support a finding that there is a "reason to believe" that a noncitizen was an illicit trafficker in a controlled substance under section 1182(a)(2)(C)(i). *See* ECF No. 8 at 2; *Alarcon-Serrano*, 220 F.3d at 1119. This evidence must be "reasonable, substantial, and probative." *Alarcon-Serrano*, 220 F.3d at 1119.

Petitioner alleges that he had no criminal history in the United States or elsewhere. ECF

[4] The original Spanish version uses the term "estupefacientes," which translates to "narcotics." *See* ECF No. 8-2 at 2; https://www.collinsdictionary.com/translator (last visited Aug. 11, 2026).

No. 1 at 5. Respondent disputes this, providing a one-page uncertified docket printout purportedly from the Republic of Colombia judiciary that has petitioner's name on it. Having reviewed this exhibit carefully, I note that there are no identifying facts on the printout other than the name that readily connect to petitioner: the birthdate has been redacted, and while there is other information, respondent has not provided any evidence linking that information to petitioner.[5] *See* ECF No. 8-1 at 1. Further, petitioner points out that this is not a certified court document; indeed, while there are sections for an official's name and signature, they are left blank. *See* ECF No. 8-1 at 1; *Cheuk Fung S-Yong v. Holder*, 600 F.3d 1028, 1035 (9th Cir. 2010) (holding that "unidentified 'conviction document'" was not sufficiently reliable).

And even if the document were certified, it still would be insufficient. Where a prior conviction is offered to support a ground of inadmissibility, the government is required to prove that the "substance underlying the [noncitizen's foreign] conviction . . . is one that is covered by Section 102 of the Controlled Substances Act ['CSA']." *Avila v. Holder*, 454 F. App'x 618, 619 (9th Cir. 2011) (cleaned up); *see also Cheuk Fung S-Yong*, 600 F.3d at 1034. This means that a prior criminal conviction must be "for possession of a substance that is . . . contained in the federal schedules of the CSA." *Cheuk Fung S-Yong*, 600 F.3d at 1034.

Here, respondent has not provided any information about what a "drug trafficking" offense consists of in the Republic of Colombia. Respondent has supplied neither a statute of conviction nor other information about what law was violated. Further, respondent has not provided any court documents that indicate the crime underlying the conviction in the printout. Finally, the docket report does not discuss what substance was at issue. *See* ECF No. 8-1 at 1.

As I must apply the modified categorical approach, *Taylor v. United States*, 495 U.S. 575, 600 (1990), to analyze this issue, the lack of factual evidence and documents in the record renders it impossible for me to determine whether the printout relates to a crime that would equate to drug trafficking under the CSA. *See Cheuk Fung S-Yong*, 600 F.3d at 1034. Under *Taylor*, the review

[5] For example, the document provides the place of birth, names of parents, and address, yet respondent has not provided any evidence that such information matches petitioner's information. *See* ECF No. 8-1 at 1.

is limited to a narrow set of noticeable documents such as "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). This document does not meet this standard or provide the necessary information. For all these reasons, I find that respondent has failed to provide "reasonable, substantial, and probative" evidence that petitioner has been an illicit trafficker of a controlled substance within the meaning of section 1182(a)(2)(C)(i). *See Alarcon-Serrano*, 220 F.3d at 1119.

In addition, petitioner argues that he cannot be mandatorily detained under this section when the NTA does not charge him with this ground of inadmissibility. ECF No. 13 at 5. As petitioner correctly notes, he is currently charged with being an "alien present without admission or parole" under 8 U.S.C. § 1182(a)(6)(A)(i), and not with the ground of inadmissibility that mandates detention under 8 U.S.C. § 1226(c)(1)(A). *See* ECF No. 8-2 at 5. The NTA must specify "[t]he nature of the proceedings against the [noncitizen]," "the legal authority under which the proceedings are conducted," and "the acts of conduct alleged to be in violation of the law." 8 U.S.C. § 1229(a)(1). In *In re Kotliar*, 24 I&N Dec. 124 (March 21, 2007), the BIA emphasized the importance of including in the NTA any ground for removal that "subjects [a noncitizen] to mandatory detention." *Id.* at 127. This is because the "charging document serves as notice to the alien of the circumstances relied on by the DHS to detain him." *Id.* "[W]here the basis for detention is not included in the charging document, the alien must be given notice of the circumstances or convictions that provide the basis for mandatory detention and an opportunity to challenge the detention before the Immigration Judge during the bond redetermination hearing." *Id.*; *see also C.Q. v. Warden of Golden State Annex Det. Center*, No. 1:26-cv-4317-MWJS, 2026 WL 1999922, at *2 (E.D. Cal. July 10, 2026) (ordering relief where NTA failed to allege mandatory detention ground).

Respondent argues that petitioner may ask for a *Joseph* hearing in immigration court to challenge the asserted ground for mandatory detention. *See Matter of Joseph*, 22 I. & N. Dec. 799, 805 (BIA 1999). In *Joseph*, immigration authorities charged the immigrant with a

mandatory detention ground, which enabled him to challenge that ground in immigration court. *See Matter of Joseph*, 22 I.&N. Dec. at 803. Here, immigration authorities have not charged petitioner with the mandatory detention ground. *See* ECF No. 8-2 at 5-6. "[I]t makes little sense to require a petitioner to exhaust administrative remedies to challenge a classification under § 1226(c) when immigration authorities have not classified the petitioner that way." *M.J. v. Chestnut*, 1:26-cv-04775-MWJS, 2026 WL 2139762, *4 (E.D. Cal. July 24, 2026) (rejecting the respondent's argument that a *Joseph* hearing should be held).

Such a result is consistent with other cases where the government asserted mandatory detention authority under 8 U.S.C. § 1226(c)(1)(A) but failed to charge that in the NTA. *See Colmenares-Pinto v. Warden of the Golden State Annex ICE Det. Fac.*, No. 1:26-cv-0812-DAD-SCR, 2026 WL 923804, at *5 (E.D. Cal. Apr. 3, 2026) ("The plain language of 8 U.S.C. § 1226(c)(1)(A) requires an administrative charge of inadmissibility by reason of having committed an offense covered under 8 U.S.C. § 1182(a)(2) as a prerequisite to mandatory detention under that provision."), *report and recommendation adopted*, 2026 WL 1430913 (E.D. Cal. May 21, 2026); *Miao v. Chestnut,* No. 1:26-cv-1271-KES-SKO, 2026 WL 947020, at *3 (E.D. Cal. April 8, 2026) (rejecting the respondent's mandatory detention argument because grounds where not charged in NTA).

Accordingly, respondent may not mandatorily detain petitioner under section 1226(c). I find that petitioner is currently being detained under section 1226(a). *See Rodriguez Vazquez v. Bostock*, No. 25-6842, __ F.4th __, 2026 WL 2196424, at *3 (holding that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)")[6]; *accord Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258, 1262 (11th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1246 (10th Cir. 2026); *Cirrus Rojas v. Olson*, No. 25-3127, __ F.4th __, 2026 WL 2198315, at *2 (7th Cir. July 30, 2026).

[6] Because the mandate has yet to issue, the court takes advisory notice of this ruling. *See* Fed. R. App. Pro. 41.

Petitioner has raised a due process claim that his re-detention without a bond hearing violates the Fifth Amendment. ECF No. 1 at 5. Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

Courts in this Circuit have repeatedly found that noncitizens released from immigration custody acquire a liberty interest in their continued release. *See Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-0379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)).

Petitioner is no different. He was paroled into the United States in April 2022. ECF No. 1 at 5. Petitioner remained out of custody, living in the United States with his wife and children until June 2026. *Id.* There are no allegations that he violated any of the terms of his release or laws in the United States. During that time, petitioner applied for asylum, a petition that is still pending. *Id.* Petitioner obtained a work permit and a social security number, and has been working, supporting his family, and paying his taxes while in this country. *Id.* Petitioner's release from immigration custody and time in the community have created a substantial constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2 (E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously

paroled into the United States pursuant to the Cuban Humanitarian Parole program).

Accordingly, I must next determine what procedural protections the government should have afforded petitioner before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context). The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner applied for asylum, received work authorization, worked, and supported his family, including his U.S. citizen son who was born in the interim. ECF No. 1 at 5. I find that petitioner acquired a private interest in continued release over four years of release in the United States. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Second, a pre-deprivation bond hearing in immigration court would have addressed that interest, and the risk of erroneous deprivation without a bond hearing is high. Immigration authorities ran records checks on petitioner, who provided his full name and identification information to them when he was first detained in April 2022. ECF No. 8-2 at 9. They found that he had no criminal history. *Id.* at 10. They released him on his own recognizance within two days. *Id.* at 8, 13. They provided him with a notice to appear, and he applied for asylum and attended his immigration proceedings out of custody. *Id.* at 5; ECF No. 1 at 5.

Prior to releasing petitioner into the United States, respondents necessarily determined

that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-1471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-0801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*.

On the contrary, the fact that the government maintains that petitioner is subject to mandatory detention and has denied him a bond hearing based on an uncertified foreign printout that provides insufficient evidence under controlling law, *see* ECF No. 8-1 at 1, indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal.

Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondent has not argued that it bears any additional burden as a result of providing a bond hearing. *See* ECF No. 8.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release. ECF No. 1 at 16. Respondent does not discuss the issue. *See* ECF No. 8. The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention.").

To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id.* at 128 (cleaned up). Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

Here, respondent does not explain in what way there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing. *See Zinermon*, 494 U.S. at 128. The one-page record from the Republic of Colombia appears to have been printed and sent to U.S. immigration authorities on April 10, 2026, although the date is partially cut off. *See* ECF No. 8-1 at 2. Immigration authorities issued the warrant for petitioner's arrest two months later, on June 18, 2026, and arrested him at his home the next day.

ECF No. 8-2 at 2, 4. Further, as noted, there is no evidence that petitioner has violated the terms of his release, and while in the United States between July 2022 and June 2026, petitioner did not commit any crime. *See* ECF No. 8-1 at 2-3; ECF No. 8-2 at 33-39.

Under these circumstances, I find that the "typical remedy" of release, *see Munaf*, 553 U.S. at 693, is appropriate. Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

Accordingly, I recommend that petitioner be released.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Petitioner's motion for temporary restraining order, ECF No. 3, be DENIED as moot.

3. Respondent be ordered to immediately release petitioner (A-Number: 240-801-100) from its custody on the same conditions as his prior release. Respondent shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

4. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

5. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: August 17, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE